**CIRCUIT COURT OF FAIRFAX COUNTY**

M. Thomas Davis
and Nancy K. Davis

    v.

D. R. Horton, Inc., et al.

March 12, 2002

Case No. (Law) 198065

BY JUDGE JANE MARUM ROUSH

This matter came on for trial on January 29, 2002, on the plaintiffs' Verified Petition of Attachment and the defendant's Response to Plaintiffs' Verified Petition of Attachment and Counterclaim. At that time, the Court took the matter under advisement. The Court has now carefully considered the pleadings, the exhibits entered into evidence at trial, and the arguments of counsel. For the reasons stated below, the Court finds in favor of the defendant D. R. Horton, Inc.

*Facts*

This case arises under the Virginia Property Owners' Association Act, Va. Code Ann. § 55-508, *et seq.* Specifically, at issue is the adequacy of the "association disclosure packet" under Va. Code § 55-512.

On March 9, 2001, plaintiffs M. Thomas Davis and Nancy K. Davis, as "Buyer," signed a Sales Agreement with defendant D. R. Horton ("Horton"), as "Seller," for the purchase of Lot 10, Stoney Creek Subdivision, in Fairfax County. The sales price for the property was $824,000. As part of the Sales Agreement, Horton agreed to construct a residence on the property. The Stoney Creek Subdivision is subject to a homeowners' association.

At the time of the execution of the Sales Agreement, the Davises admit that they received by hand-delivery from Horton the Deed of Subdivision for Stoney Creek Subdivision (Plaintiffs' Ex. # 4), the Declaration of Covenants, Conditions and Restrictions Stoney Creek Home Owners Association (Plaintiffs' Ex. # 5), and the D. R. Horton Custom Homes Owner's Association Disclosure and Agreement (Plaintiffs' Ex. # 9). The Davises deny that they received a copy of the bylaws of the homeowners association (Defendant's Ex. # 5) or a proposed budget for the homeowners association.

Horton claims it gave the Davises the complete disclosures required by law, including the homeowners association bylaws and proposed budget. Defendant's Ex. ## 3 and 5.

By July 2001, the Davises became dissatisfied with the quality of construction of their new house. They wanted to terminate their contract with Horton. They consulted an attorney who wrote Horton on July 8, 2001, purporting to terminate the Sales Agreement because of the inadequacy of the disclosure documents under Code §§ 55-511 and 55-512.[1]

Horton refused to recognize the purported termination of the Sales Agreement. After the Davises refused to close on the purchase, Horton sold the house to substitute purchasers on October 31, 2001, for $760,000.

Horton has refused to return the Davises' $83,000 deposit made pursuant to the Sales Contract. The Davises seek a return of their deposit. The Davises have attached bank accounts of Horton's in the amount of $83,000.

Horton has counterclaimed against the Davises, seeking to recover from them the difference between the contract price for the property under its Sales Agreement with the Davises and the sales price eventually obtained from the substitute purchasers.

Each side seeks attorney's fees from the other.

*Applicable Law: Va. Code §§ 55-511 and 55-512*

At the time of the execution of the Sales Agreement, Code § 55-511 provided that each contract of sale for a property subject to a homeowners' association shall contain a disclosure that:

(i) the lot is located within a development which is subject to the Virginia Property Owners' Association Act; (ii) the Act requires the

---

[1] It is irrelevant that the plaintiffs' avowed dissatisfaction with the disclosure documents was pretextual. If the disclosures required under Va. Code § 55-511 are inadequate, the purchaser may cancel for any reason or for no reason, provided the purchaser cancels within the time provided by statute. *Reistroffer v. Person*, 247 Va. 45, 49, 439 S.E.2d 376 (1994).

seller to obtain from the property owners' association an association disclosure packet and provide it to the purchaser; (iii) the purchaser may cancel the contract within three days after receiving the association disclosure packet or being notified that the association disclosure packet will not be available; and (iv) the right to receive the association disclosure packet and the right to cancel the contract are waived conclusively if not exercised before settlement.

Virginia Code § 55-511(A) (Repl. Vol. 1995, 2000 Cum. Supp.). If the contract does not contain these disclosures, the purchaser's sole remedy is to cancel the contract before closing. Va. Code § 55-511(B).

Where the purchaser has been hand-delivered a disclosure packet, the purchaser has the right to cancel the contract within three days of receipt of the disclosure packet. Code § 55-511(C). If the contract is cancelled, the seller must return the purchaser's deposit promptly or within thirty days. Code §§ 55-511(C) and (D).

Virginia Code § 55-512 sets forth what the disclosure packet must contain. At the time of the execution of the Sales Agreement, that section provided, in pertinent part, that the disclosure packet must contain:

1. The name of the association and, if incorporated, the state in which the association is incorporated and the name and address of its registered agent in Virginia;

2. A statement of any expenditure of funds approved by the association or the board of directors which shall require an assessment in addition to the regular assessment during the current year or the immediately succeeding fiscal year;

3. A statement, including the amount of all assessments and any other mandatory fees or charges currently imposed by the association and associated with the purchase, disposition, and maintenance of the lot and to the right of use of common areas, and the status of the account;

4. A statement whether there is any other entity or facility to which the lot owner may be liable for fees or other charges;

5. A statement of the status and amount of any reserve or replacement fund and any portion of the fund allocated by the board of directors for a specified project;

6. A copy of the association's current budget or a summary thereof prepared by the association, and a copy of its statement of

income and expenses or statement of its financial condition for the last fiscal year for which such statement is available;

7. A statement of the nature and status of any pending suit or unpaid judgment to which the association is a party which either could or would have a material impact on the association or its members or which relates to the lot being purchased;

8. A statement setting forth what insurance coverage is provided for all lot owners by the association, including any fidelity bond maintained by the association, and what additional insurance would normally be secured by each individual lot owner;

9. A statement that any improvement or alteration made to the lot, or uses made of the lot or common area assigned thereto by the prior lot owner, are not in violation of any of the instruments referred to in subdivision 12 of this subsection;

10. A statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to place a sign on the owner's lot advertising the lot for sale;

11. A statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to display any flag on the owner's lot including, but not limited to reasonable restrictions as to the size, place, and manner of placement or display of such flag and the installation of any flagpole or similar structure necessary to display such flag;

12. A copy of the current declaration, the association's articles of incorporation and bylaws, and any rules and regulations or architectural guidelines adopted by the association; and

13. Certification, if applicable, that the association has filed with the Real Estate Board the annual report required by § 55-516.1; which certification shall indicate the filing number assigned by the Real Estate Board and the expiration date of such filing.

Virginia Code § 55-512(A) (Repl. Vol. 1995, 2000 Cum. Supp.).

## *Issues*

The Davises contend that the disclosure packet they were given does not satisfy all of the requirements of Code § 55-512. Therefore, they argue, they were never given a disclosure packet as required by law. According to the Davises, the three-day period provided by Code § 55-511 never began to run and they were entitled to cancel their contract anytime prior to closing.

Horton argues that its disclosure packet complied with law. Even if the disclosure packet was lacking, Horton contends, the Davises had three days from its receipt to voice their dissatisfaction with the disclosure packet by canceling the contract.

Summarizing, there is no dispute that the Sales Agreement contained the disclosures required by Code § 55-511. Plaintiffs' Ex. # 2, ¶ XXIII. There is also no dispute that the Davises received a disclosure packet by hand-delivery on March 9, 2001. What is disputed is whether the disclosure packet contained all of the information required by Code § 55-512 and, if it did not, whether the Davises had a right to cancel the contract on July 8, 2001, some four months after their receipt of the disclosure packet.

### Horton's Disclosure Packet

The Sales Agreement refers in paragraph XXIII to the "Owner's Association Disclosure and Agreement attached hereto." In addition, paragraph XXVII refers to the "Owners Association Disclosure and Agreement" that is attached to the Sales Agreement and "incorporated herein by reference and an integral part of this Agreement." Plaintiffs' Ex. # 2.

Attached to the Sales Agreement is an addendum entitled "D?R? [sic] Horton Custom Homes Owner's Association Disclosure and Agreement." Plaintiffs' Ex. ## 2 (addendum) and 9. In paragraph 2 of that addendum, the Davises acknowledged receiving the disclosure packet and acknowledged that the disclosure packet contained all of the disclosures required by statute. The Davises separately signed the addendum beneath an acknowledgement, that:

I (we) hereby acknowledge receipt of this addenda to the sales agreement. I (we) have read and understand all the sections incorporated in this addenda.

Plaintiffs' Ex. ## 2 and 9 (capitalization as in original).

Despite this acknowledgment, the Davises contend that the disclosure packet they received failed to comply with the requirements of Code § 55-512 in several respects. The Davises maintain that the disclosure packet was deficient in that it did not contain the disclosures required by Code §§ 55-512(A)(1), (2), (3), (4), (5), (6), (7), (8), (9), (12), and (13). Petition for Attachment, Exhibit F.

The principal dispute between the parties is whether the Davises received a copy of the association's bylaws. Defendant's Ex. # 5. In addition, the Davises maintain that the copy of the Declaration of Covenants, Conditions, and Restrictions ("CCRs") they received (Plaintiffs' Ex. # 5) was not as

extensive as the CCRs that Horton claims to have given them (Defendant's Ex. # 3).

Determining whether or not the Davises received the association's bylaws, or whether they received the complete CCRs (Defendant's Ex. # 3) or the incomplete CCRs (Plaintiffs' Ex. # 5) rests largely on an assessment of the credibility of the witnesses. As the finder of fact, the court had the opportunity to observe the witnesses and their demeanor and make determinations as to their credibility. I find the testimony of Mr. Luke Moody, the sales manager of Horton, to be more credible than that of the Davises on the issue of what was contained in the disclosure packet. Mr. Moody testified that Horton has a standard disclosure packet that Horton gives to all contract purchasers and that packet contains the complete CCRs (including budget information) and the association's bylaws. The credibility of Mr. Moody's testimony is bolstered by the Davises' acknowledgment in the Owner's Association Disclosure and Agreement (Plaintiffs' Ex. # 9) that they received the bylaws. It was not disputed by either side that the Davises carefully considered each and every line of the contract before agreeing to buy an $824,000 house. In fact, Mrs. Davis asked for and received an additional week to consider thoroughly the contract before returning to Horton the signed original. In addition, Mrs. Davis testified at her deposition that she read the bylaws when they were given to her in March 2001. Given the degree of care that the Davises exhibited before executing the Sales Agreement, I find it unlikely that they would acknowledge receipt of bylaws that they did not in fact receive.

As the finder of fact, the Court concludes, based on the credibility of the witnesses, that Horton in fact gave the Davises the bylaws and the complete CCRs at the time the Sales Agreement was entered into in March 2001. I find that Horton's entire disclosure packet complied in all material respects with applicable law. If the Davises were dissatisfied with any aspect of the disclosure packet, they had three days to cancel the Sales Agreement. Their purported cancellation of the Sales Agreement several months later was simply too late.

Even if Horton's disclosure packet were deficient in March 2001, I find that the Davises' remedy was to cancel the Sales Agreement within three days of their receipt of the incomplete disclosure packet. The Owner's Association Disclosure and Agreement (Plaintiffs' Ex. # 9) fully apprised the Davises of what disclosures they were entitled by law to receive. If they thought the disclosure packet was deficient, they could cancel the Sales Agreement within three days of their receipt of the packet. Under Code § 55-511, a purchaser can cancel a sales agreement up until closing only if the purchaser is not given a disclosure packet at all or is not informed that a disclosure packet will not be

available. In a case such at this case, where the disclosure packet was given at the time of the signing of the contract but the purchasers are not satisfied with the completeness of the packet, the only remedy is to cancel within three days of the receipt of the packet.

In Section XII(a) of the Sales Agreement, the Davises agreed to pay all of Horton's attorney's fees in the event of their default. Horton submitted evidence that its attorney's fees expended in this matter equal $9,097.90. The Davises did not dispute the reasonableness of those attorney's fees.

## Conclusion

For the foregoing reasons, the Court finds in favor of the defendant, D. R. Horton, Inc., on the plaintiffs' Verified Petition of Attachment. The pre-judgment attachment of Horton's accounts will be released. The Court finds in favor of D. R. Horton, Inc., on its counterclaim. Judgment will be entered in favor of D. R. Horton, Inc., against M. Thomas Davis and Nancy K. Davis in the amount of $64,000, the difference in the sales price under the Sales Agreement and the sales price Horton obtained when it sold the property to substitute purchasers after the Davises' default, plus attorney's fees of $9,097.90, plus costs. The amount of the judgment may be deducted from the Davises' deposit held by Horton and the difference refunded to the Davises.